# ATTACHMENT S

```
 1                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2
       * * * * * * * * * * * * * *
 3     UNITED STATES OF AMERICA    *
                                   *
 4              vs.                *    CRIMINAL ACTION
                                   *    No. 11-10229-JLT
 5     ELIZABETH REED               *
                                   *
 6     * * * * * * * * * * * * * *

 7             BEFORE THE HONORABLE JOSEPH L. TAURO
                  UNITED STATES DISTRICT JUDGE
 8                         SENTENCING

 9     A P P E A R A N C E S

10            UNITED STATES ATTORNEY'S OFFICE
              1 Courthouse Way, Suite 9200
11            Boston, Massachusetts 02210
              for the United States
12            By:  Victor A. Wild, AUSA

13
              GLEASON LAW OFFICES, P.C.
14            163 Merrimack Street
              Haverhill, Massachusetts 01830
15            for the defendant
              By:  Scott F. Gleason, Esq.
16

17

18
                                    Courtroom No. 22
19                                  John J. Moakley Courthouse
                                    1 Courthouse Way
20                                  Boston, Massachusetts 02210
                                    June 19, 2013
21                                  2:30 p.m.

22

23            CAROL LYNN SCOTT, CSR, RMR
                  Official Court Reporter
24            One Courthouse Way, Suite 7204
                Boston, Massachusetts 02210
25                   (617) 330-1377
```

|     |     |
| --- | --- |
| 1   | P R O C E E D I N G S |
| 2   | THE CLERK: All rise for the Honorable Court. |
| 3   | THE COURT: Good afternoon, everybody. |
| 4   | VOICES: Good afternoon, Your Honor. |
| 5   | THE CLERK: This is criminal matter |
| 6   | No. 11-10229. |
| 7   | THE COURT: Sit down, please. |
| 8   | THE CLERK: The United States of America |
| 9   | versus Elizabeth Reed. |
| 10  | Counsel please identify themselves for the record. |
| 11  | MR. WILD: Good afternoon, Your Honor. Victor |
| 12  | A. Wild for the government. |
| 13  | THE COURT: Good afternoon. |
| 14  | MR. GLEASON: Good afternoon, Your Honor. |
| 15  | Scott Gleason on behalf of Ms. Reed. And here seated to my |
| 16  | right is Ms. Reed. |
| 17  | THE COURT: Okay. We are here for |
| 18  | disposition? |
| 19  | MR. WILD: We are, Your Honor. |
| 20  | THE COURT: Okay. The government has a |
| 21  | recommendation? |
| 22  | MR. WILD: Your Honor, I assume that the Court |
| 23  | is adopting the Presentence Report evaluation and |
| 24  | calculation of the *Guidelines*? |
| 25  | THE COURT: Yes. |

```
 1                 MR. WILD:  There has been no contest of the
 2    calculation of the Guidelines.
 3                 THE COURT:  No.
 4                 MR. WILD:  That leaves us, Your Honor, with a
 5    guideline range of 121 to 151 months.
 6                 THE COURT:  We all understand I am not bound
 7    by it; right?
 8                 MR. WILD:  Pardon me?
 9                 THE COURT:  I am not bound by that range.
10                 MR. WILD:  Oh, of course.  And, in fact, we're
11    not suggesting --
12                 THE COURT:  Of course what?
13                 MR. WILD:  Of course you're not and we're not
14    suggesting a sentence within that range.
15                 THE COURT:  Okay.  Go ahead.
16                 MR. WILD:  There is a part of this hearing
17    that I would ask that the parties meet the Court at sidebar
18    and that we seal that portion of the hearing.
19                 First I would like to simply make a generalized
20    statement and that is of the nature of the crime here, it's
21    a very extensive mortgage fraud.  It involved millions and
22    millions of dollars.  Fraudulent conduct involving false
23    verifications of deposit, loan applications, creation of
24    false documents and so forth.  It's a very extensive crime.
25    And that's why the guidelines were so high.
```

```
 1         The guidelines come to level 32, Your Honor.
 2    That's the 121 to 151 months.  Our recommendation is a
 3    sentence of 72 months with three years of supervised
 4    release, no fine --
 5              THE COURT:  I thought it was 84.
 6              MR. WILD:  I'm sorry?
 7              THE COURT:  I thought it was 84 months.
 8              MR. WILD:  No, our recommendation is 72
 9    months.
10              THE COURT:  Okay.  Then I misread.
11              MR. WILD:  And restitution in the amount of
12    $5,654,900 as set forth in the PSR but we don't ask for
13    that.  However, we do ask for $2,080,100.  And the reason
14    for the difference, Your Honor, is that Taylor, Bean was the
15    only company that held onto their mortgages from the
16    beginning and remained as the one victim on those mortgages.
17         On all of the others they were sold sequentially
18    through the market and, quite frankly, the government cannot
19    define and identify victim and victim amount for the rest of
20    the restitution.  So we're only asking -- I say "only"
21    recognizing it's a very large number -- for the amount
22    payable to Taylor, Bean.
23         We are requesting a special assessment of $5,300,
24    forfeiture per motion filed with the Court by Mary Murrane,
25    the Chief or our Asset Forfeiture Unit, and the number in
```

```
 1    that forfeiture amount is $1,308,918.  These are the
 2    proceeds directly traceable as net to the defendant.  In
 3    other words, she received far more than that as proceeds
 4    from the mortgage loans but we subtracted out the amounts
 5    that we know she spent paying straw borrowers kickbacks on
 6    the loans.  So although that could be held as a forfeitable
 7    amount as well, we're not asking for that larger amount.
 8            The 72 months that we're asking for in this case,
 9    the Court may remember you sentenced Robert Odimegwu to 60
10    months about three or four months ago I think it was.  He
11    was associated with this defendant.  In fact, he was a
12    client of hers at her mortgage company and he helped teach
13    her how to conduct the kind of scheme with which she is
14    specifically charged in this case, that is, buy a multi-unit
15    building, immediately, virtually overnight convert it to
16    condominiums, resell the individual units for a much higher
17    price using straw buyers for whom she created false
18    documents in order to get them to qualify for mortgage loans
19    promising them the kickbacks I mentioned, promising them
20    they would pay no down payment, promising them they would
21    not pay mortgages and that she would take care of all of
22    those things, which she did do.
23            And so the sentencing here would be somewhat akin
24    to what the Court ordered Robert Odimegwu to serve.  His
25    events occurred beginning before hers.
```

```
 1              THE COURT:  Refresh my memory, was there any
 2   history of cooperating by him?
 3              MR. WILD:  May I have one moment?
 4              No, Your Honor.  The agents involved in that case
 5   are the same agents in this case.  I didn't think so and
 6   they've confirmed he did not cooperate.
 7              THE COURT:  Okay.  Go ahead.
 8              MR. WILD:  Your Honor, the sentencing of 72
 9   months is also akin to attorney Marc Foley.  He was a
10   closing attorney this defendant used for the larger of her
11   frauds when she bought 24 unit, a 24-unit building, for
12   example.  She testified at his trial before Judge O'Toole
13   and he was convicted there.  And he was sentenced to 72
14   months -- I'm sorry.  It was Judge Stearns.  He was
15   sentenced to 72 months.
16              So her sentence here is comparable to that even
17   though her own personal misconduct is larger than Marc
18   Foley.  She employed Marc Foley and she was involved in far
19   more properties than Mr. Foley.
20              The government has reduced for our sentencing
21   recommendation by five levels and 51 months what would
22   otherwise be an applicable range of 121, to which the Court
23   is not bound.  So we've taken into consideration a
24   five-level, 51-month reduction.  And the reason we've done
25   that is that, as this Court know, a crime of this kind, an
```

1   economic crime, particularly a mortgage fraud is so driven
2   by the loss number that the loss number has an overhanded
3   application in a case like this. And we have taken that
4   into consideration here, if I may, on the defendant's behalf
5   because we are trying to be realistic about how the
6   guidelines can impact, and sometimes too weightily, on a
7   particular guideline.
8           So the government's recommendation then would be
9   service of the 72 months with the other sentence factors
10  that I've articulated.
11          At this point, Your Honor, I'd very much ask the
12  Court to accept us at sidebar because there is a fairly
13  extensive matter that I think the parties jointly want the
14  Court to hear that should not be on the public record.
15          **THE COURT:** Well, when you say "not on the
16  public record," do you want it sealed?
17          **MR. WILD:** I do.
18          **THE COURT:** Well, we have to have a motion.
19          **MR. WILD:** I will move orally.
20          **THE COURT:** That *Kravetz* case requires you to
21  redact what needs to be redacted. I don't know what it is
22  you want to have sealed.
23          **MR. WILD:** I want what I'm going to tell you
24  at sidebar to be sealed and I think counsel joins me in
25  that.

```
 1                THE COURT:  All right.  Come up here.
 2                MR. WILD:  Thank you.
 3                MR. GLEASON:  May my client also approach,
 4    Your Honor?
 5                THE COURT:  Sure.
 6           (Whereupon, the sidebar conference was transcribed
 7    under separate cover.)
 8                MR. WILD:  Your Honor, my motion is that this
 9    portion at sidebar be sealed.
10                THE COURT:  Yes, that will be sealed.
11                MR. WILD:  Thank you.
12                THE COURT:  And the notes too.
13                THE COURT REPORTER:  Yes, Judge.
14                THE COURT:  Having in mind all the
15    extraordinary circumstances that have permeated this case I
16    am going to sentence her to 18 months.  And then I am
17    interested in the additional matters that you wanted added
18    to that.
19                MR. WILD:  Yes, Your Honor.  May I list them?
20                THE COURT:  Yes.  I want to make sure that
21    Ms. Lovett has an accurate list so that we can make a proper
22    recitation in the order.
23                MR. WILD:  Yes, Your Honor.  In addition, we
24    request that the Court order three years of supervised
25    release after incarceration.
```

```
 1              THE COURT:  Any objection to that?
 2              MR. GLEASON:  No, Your Honor.
 3              THE COURT:  Okay.  We will do that.
 4              MR. WILD:  That there be no fine.
 5              THE COURT:  No fine.
 6              MR. WILD:  In light of orders of restitution
 7  and forfeiture, we ask for restitution to the Taylor, Bean
 8  Mortgage Company in the amount of $2,080,100.
 9              We ask for a special assessment of $5,300.  There
10  are 53 counts in the indictment.
11              And we ask for the forfeiture per the motion we
12  filed with the Court and there is a proposed order with the
13  motion.
14              THE COURT:  I saw that.
15              MR. WILD:  Those are the matters we requested,
16  Your Honor.
17              THE COURT:  Okay.  Any objection to any of
18  them?
19              MR. GLEASON:  Judge, just with regards to the
20  forfeiture.  We have no objection if I might have, if I do
21  find something, I have not even read them yet, I'll be happy
22  to supplement.
23              THE COURT:  We have it right here
24  (indicating).
25              THE CLERK:  I have a copy.
```

```
 1              MR. WILD:  Your Honor, counsel only received
 2   it -- he has been away from his computer and it was filed
 3   today.
 4              THE COURT:  All right.  You want to give him a
 5   chance to come back later and object to any part of it?
 6              MR. GLEASON:  If I have an objection, I will.
 7              THE COURT:  Okay.  I will permit you to do
 8   that.
 9              MR. WILD:  So I would ask the Court to enter
10   the order subject to the defense having a right to object.
11              THE COURT:  I will do that.  We will enter the
12   order subject to the opportunity to revisit the order by
13   defense counsel.
14              MR. WILD:  Thank you.
15              MR. GLEASON:  And if my client may personally
16   present herself to the facility of choice of the Marshal's
17   Office?
18              THE COURT:  Self-report you mean?
19              MR. GLEASON:  Please.
20              THE COURT:  Any objection to that?
21              MR. WILD:  Oh, certainly not, Your Honor.
22              THE COURT:  Okay.  Ms. Lovett will have to
23   give you a date.
24              THE CLERK:  July 22nd.
25              MR. GLEASON:  Thank you.
```

```
 1              THE CLERK:  Self-report.
 2              MR. GLEASON:  Thank you.
 3              THE COURT:  Is that all right?
 4              MR. WILD:  Thank you, Your Honor.
 5              THE COURT:  Anything else that should come up?
 6              THE PROBATION OFFICER:  Your Honor, we have a
 7    few things to add from Probation.
 8              THE COURT:  Go ahead.
 9              THE PROBATION OFFICER:  Just to clarify, the
10    18-month sentence and the 36 months of supervised release,
11    is that on all counts to run concurrently?
12              THE COURT:  Concurrently, yes.
13              THE PROBATION OFFICER:  Thank you.
14         And also I would just like to add on the
15    restitution payment, that she be ordered to pay jointly and
16    severally with anyone else convicted on this case.  There
17    were several other defendants involved.
18              MR. WILD:  I would join in that, Your Honor.
19    It's my neglect.  I failed to mention that Marc Foley and
20    Sean Robbins are potentially co-payers on that.  And the
21    obligation of this defendant should be joint and several
22    with Marc Foley and Sean Robbins.
23              THE COURT:  We will list it that way.
24              THE PROBATION OFFICER:  Your Honor, we would
25    ask that the defendant be ordered to follow the standard,
```

```
 1    the following standard conditions:
 2              That she not commit another federal, state or local
 3    crime and shall not possess any controlled substance.
 4              THE COURT:  Any objection to that?
 5              MR. GLEASON:  No objection, Your Honor.
 6              THE PROBATION OFFICER:  Your Honor, we ask
 7    that in light of the fact that Ms. Reed has no known
 8    substance abuse issues that the drug testing conditions that
 9    are mandatory be otherwise waived.
10              THE COURT:  Okay.  Any objection to that?
11              MR. GLEASON:  No objection.
12              MR. WILD:  No.
13              THE PROBATION OFFICER:  We ask, Your Honor,
14    that the defendant be required as directed by the statute to
15    submit to the collection of a DNA sample as directed by the
16    Probation Office.
17              THE COURT:  Any objection?
18              MR. GLEASON:  No objection, Your Honor.
19              THE PROBATION OFFICER:  We ask that the
20    defendant comply with the standard conditions that have been
21    adopted by the Court and appear at 5D1.3 and will be set
22    forth in detail in the judgment.
23              THE COURT:  Any objection?
24              MR. GLEASON:  No objection, Your Honor.
25              THE PROBATION OFFICER:  We'd ask that Your
```

```
 1   Honor impose a condition that she be prohibited from
 2   possessing a firearm, destructive device or other dangerous
 3   weapon.
 4                THE COURT:  Any objection?
 5                MR. GLEASON:  No objection.
 6                THE PROBATION OFFICER:  We ask that she be
 7   directed to pay the balance of the restitution according to
 8   a court-ordered payment schedule.
 9                THE COURT:  Any objection there?
10                MR. GLEASON:  No objection, Your Honor.
11                THE PROBATION OFFICER:  We ask that she be
12   prohibited from incurring new lines of credit or opening
13   additional lines of credit without the approval of the
14   Probation Office while any financial obligations remain
15   outstanding.
16                THE COURT:  Any objection?
17                MR. GLEASON:  No objection.
18                THE PROBATION OFFICER:  We ask that she be
19   required to provide the Probation Office with access to any
20   financial records and that the Probation Office may share
21   those records with the Financial Litigation Unit in the U.S.
22   Attorney's Office.
23                MR. GLEASON:  No objection.
24                THE COURT:  Okay.  Go ahead.
25                THE PROBATION OFFICER:  And, finally, Your
```

```
 1    Honor, we would ask that the defendant be required to meet
 2    with the Internal Revenue Service during the first 90 days
 3    of the period of supervised release in order to determine
 4    any outstanding tax liability.
 5                 THE COURT:  Any objection to that?
 6                 MR. GLEASON:  No, thank you, Judge.
 7                 THE COURT:  Thank you very much.
 8           All right.  Ms. Reed, you have now been sentenced.
 9    And as one who has been sentenced, you have a right to
10    appeal that sentence if you would care to do so.
11           If you don't have funds to prosecute an appeal, you
12    will be permitted to appeal without payment of any fees.
13           If you don't have funds for a lawyer, one will be
14    provided for you.
15           You have 14 days to file a Notice of Appeal if it
16    is your intention to do so.
17           Do you understand that?
18                 THE DEFENDANT:  Yes, Your Honor.
19                 THE COURT:  Okay.
20                 MR. WILD:  Your Honor?
21                 THE COURT:  Yes.
22                 MR. WILD:  The plea agreement does have -- has
23    been fully executed and does have limitations on appellate
24    rights which may control some of the otherwise applicable --
25                 THE COURT:  If they do, they do but I am going
```

Case 1:10-cr-10264-RGS   Document 411-19   Filed 08/21/15   Page 16 of 17
Case 1:11-cr-10229-PBS   Document 49   Filed 03/03/14   Page 15 of 16

15

```
 1    to let mine stand subject to those trumping that episode,
 2    okay.
 3              MR. WILD:  Thank you.
 4              THE COURT:  Anything else?
 5              MR. WILD:  No, Your Honor.
 6              MR. GLEASON:  No, thanks, Judge.
 7              THE COURT:  Okay.  Thank you.  You are all
 8    excused.
 9              MR. GLEASON:  Thank you, Judge.
10         (Pause in proceedings.)
11              THE COURT:  I am going to deny your motion for
12    downward departure as moot.
13              MR. GLEASON:  Thank you.
14              MR. WILD:  Thank you, Your Honor.
15
16         (WHEREUPON, the proceedings were recessed at 3:10
17         p.m.)
18
19
20
21
22
23
24
25
```

CERTIFICATE

I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/CAROL LYNN SCOTT

---

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377

**DATE: February 28, 2014**